UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERESA GAIL ROUSE,<br>　　　　Plaintiff, | )<br>)<br>) |
| v. | ) CAUSE NO.: 2:20-CV-399-JPK |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of<br>Social Security,<br>　　　　Defendant. | )<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed on November 5, 2020, and Plaintiff's Memorandum in Opposition to the Secretary's Decision Denying Plaintiff's Claim for Benefits [DE 19], filed on July 15, 2021. Plaintiff requests that the March 24, 2020 decision of the Administrative Law Judge (ALJ) denying her claim for disability insurance benefits be reversed and remanded for a new hearing. For the following reasons, the Court grants Plaintiff's request.

**PROCEDURAL BACKGROUND**

On April 24, 2018, Plaintiff filed an application for disability insurance benefits, alleging disability beginning April 18, 2018. Plaintiff's application was denied initially and on reconsideration. (AR 136-142).[1] Plaintiff then requested a hearing, which was held before an Administrative Law Judge (ALJ) on November 20, 2019. (AR 39-99). On March 14, 2020, the ALJ issued an unfavorable decision, making the following findings:[2]

    1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

---

[1] Page numbers in the Administrative Record (AR) refer to the page numbers assigned by the filer, which are found on the lower right corner of the page, and not the page numbers assigned by the Court's CM/ECF system.

[2] These findings quote the bolded findings throughout the ALJ's decision. Internal citations to the Code of Federal Regulations are omitted.

2.      The claimant has not engaged in substantial gainful activity since April 18, 2018, the alleged onset date.

3.      The claimant has the following severe impairments: fibromyalgia; mild spondylosis in the lumbar and thoracic spine; cervical radiculopathy; osteoarthritis of the feet and hands; bipolar disorder; generalized anxiety disorder; PTSD.

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      … [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can: stand or walk for approximately four hours in an eight-hour workday and sit for six hours in an eight-hour workday with normal breaks; lift and carry up to 20 pounds occasionally and 10 pounds frequently; never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead and frequently handle and finger with the bilateral upper extremities. She can have occasional exposure to: extreme cold, extreme heat, humidity, or to hazards such moving mechanical parts or unprotected heights. Due to mental and subjective pain complaints, she is able to understand, remember and carry out work that consists of no more than simple and routine tasks, requires a work environment free of fast paced or timed piece rate production work, but can meet end of day goals, can perform routine judgment defined as being able to make simple work-related decisions, and is also limited to simple workplace changes.

6.      The claimant is unable to perform any past relevant work.

7.      The claimant . . . was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

(AR 15-32).

Plaintiff appealed, but the Appeals Council denied review. (AR 1-3). Plaintiff then filed this civil action seeking review of the Agency's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). The question before the Court is not whether the claimant is in fact disabled, but whether the ALJ's decision "applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). Under § 405(g), the Court must accept the Commissioner's factual findings as conclusive if they are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). However, "if the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)). At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ also has a basic obligation to develop a full and fair record and "must build an accurate and logical bridge

between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability," which is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ follows a five-step inquiry to determine whether a claimant is disabled: (1) whether the claimant has engaged in substantial gainful activity since the alleged onset of disability, (2) whether the claimant has a medically determinable impairment or combination of impairments that is severe, (3) whether the claimant's impairment or combination of impairments meets or medically equals the criteria of any presumptively disabling impairment listed in the regulations, (4) if the claimant does not meet a listing, whether she is unable to perform her past relevant work, and (5) if the claimant is unable to perform past relevant work, whether she is unable to perform any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Prior to step four, the ALJ determines the claimant's residual functional capacity (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). An affirmative answer at either step three or step five leads to a finding of disability. *Briscoe ex rel. Taylor v. Barnhart*, 524 F.3d 345, 352 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

# ANALYSIS

Plaintiff asserts three grounds for reversal of the ALJ's decision: that the ALJ erred in assessing the opinion of Plaintiff's treating psychiatric nurse, erred in her evaluation of Listings 12.04, 12.06, and 12.15, and failed to properly account for Plaintiff's mental limitations in the RFC. (Pl.'s Br. 8-17, ECF No. 19). The Court considers the first two issues in the order presented, but does not resolve the third issue because the case is remanded on other grounds.

**I.         Opinion of Gerald Lewis**

Plaintiff first argues that the ALJ failed to adequately support her evaluation of the opinion of Gerald Lewis, the nurse who regularly treated her at a psychiatric clinic. For claims filed after March 27, 2017, as Plaintiff's was, the regulations no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Therefore, the so-called "treating physician rule" – which gave special deference to a claimant's own doctor unless the ALJ provided a "good reason" – no longer applies. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). Nonetheless, the ALJ must still provide a written explanation for her conclusion about the treating physician's opinion, drawing a logical bridge from the evidence to the conclusion. *See Giza v. Kijakazi*, No. 2:20-CV-00263-SLC, 2021 WL 4551387, at *5 (N.D. Ind. Oct. 5, 2021); *Inman v. Saul*, No. 1:20-CV-231-DRL, 2021 WL 4079293, at *3 (N.D. Ind. Sept. 7, 2021); *Tammy M. v. Saul*, No. 2:20-CV-285-WCL, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021).

Moreover, the ALJ must still weigh the same factors in considering medical opinion evidence: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length and purpose of the relationship; (4) specialization; and (5) any other factors that would

"tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c, 416.920c. The "most important factors" are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ is not required to explain how the other three factors were considered, but can address them as appropriate. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

In this case, the ALJ found Lewis's treating source statement "not persuasive." (AR 28-29). In the treating source statement, presented on a form with checkboxes and short answer prompts, Lewis opined that Plaintiff suffered from at least 30 different kinds of mental health symptoms such as depressed mood, irritability, low appetite, sleep disturbance, fatigue, and panic attacks. (AR 1010-11). Lewis opined that Plaintiff would miss at least three days a month due to her impairments, and would have "marked" difficulty with each of the 25 work-related tasks listed on the form, including interaction with co-workers and the public, adhering to basic standards of cleanliness, maintaining attention, adapting to changes in the workplace, and following instructions. (AR 1011-1014).

The ALJ summarized Lewis's opinion before providing the following analysis:

Nurse Lewis has been treating the claimant since December 2014 and sees the claimant every two to three months. Nurse Lewis indicated that the claimant has a myriad of mental health signs and symptoms, checking almost all of the boxes on the form provided, and noted diagnoses of ADHD, bipolar disorder depressed, generalized anxiety disorder, and PTSD. However, there is minimal objective support in the opinion itself explaining the basis for the opinion. Nurse Lewis indicated that the claimant has difficulty maintaining moods, impulsive behaviors, and frequent episodes of suicidal thoughts. Nurse Lewis's opinion is not supported by his own treatment notes and is not consistent with treatment notes from other treatment providers.

At an initial consultation in 2015 with Natalie Bauer, MSW, LCSW, the claimant stated that Lamictal made her feel "really good, and like a new person" and was helping her "tremendously" and was to start weekly therapy. She had a mostly normal mental status examination with focused concentration. In January 2019, she had been doing a little better since her last visit to Nurse Lewis in August 2018. She had some financial issues with her husband but did not endorse any suicidal thoughts, homicidal thoughts, auditory hallucinations, visual hallucinations, or

>delusions. She had a depressed mood with intermittent anxiety and a constricted affect, but had normal eye contact, normal speech, normal appearance, cooperative behavior, focused concentration, intact insight and judgment, intact memory, and logical, goal-directed thoughts. Her primary care provider indicated in April 2019 that the claimant's bipolar disorder and anxiety were stable. The claimant was taking care of her grandchildren in July 2019 as both of her sons were in jail, and was having more depression but did not endorse suicidal thoughts, homicidal thoughts, auditory hallucinations, visual hallucinations, or delusions. She had no change in findings on mental status examination. Her Lamictal was changed to 200 mg one-half pill in the morning and one pill at bedtime. In October 2019, she rated her depression as a five to six out of ten and her anxiety as a six out of ten. Her mood was up and down on mental status examination with intermittent anxiety but an appropriate. Accordingly, Nurse Lewis's opinion is not persuasive.

(AR 28-29 (citations to record omitted)). Plaintiff argues that the ALJ cherry-picked from the record to support her conclusions about Lewis's opinion, ignored Lewis's own treatment records that showed evidence of disability, and mischaracterized some of the medical notes she did cite. The Commissioner argues that the ALJ properly supported her conclusion about Lewis's opinion with substantial evidence, and that Plaintiff misconstrues the ALJ's findings on this issue.

In critiquing the ALJ's analysis of Lewis's opinion, Plaintiff understandably focuses on the paragraphs cited above, in which the ALJ compares the opinion to a select few medical records, only one of which came from Lewis. Plaintiff claims the ALJ "ignored" Lewis's findings that supported the opinion. (Pl's Br., ECF No. 19 at 9). But the ALJ preceded her analysis of Lewis's opinion with a fuller discussion of the medical record, including Lewis's notes, for the step two and step three analyses. (*See* AR 20-22, 25, 28-29). The ALJ did not need to rehash records she had already summarized. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant."). Therefore, the Court considers the entirety of the ALJ's discussion of the record, not just the summary contained in the paragraph addressing Lewis's opinion.

As explained above, the ALJ is specifically obliged to consider both the "supportability" and the "consistency" of every medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(2). "Supportability" is the extent to which the medical provider's evidence and explanations support his conclusions; "consistency" is how well the opinion corresponds to the evidence from all sources. *Id*. As for supportability, the ALJ repeatedly referenced Lewis's notes, and discussed the following facts described therein:

- Plaintiff showed "no impairment of memory" at most visits (AR 21 (citing, *e.g.*, AR 441, 445, 450, 458));

- Plaintiff typically demonstrated "focused concentration" and "normal eye contact and cooperative behavior" at treatment visits (AR 21, 28 (citing, *e.g.*, AR 444, 449, 454, 851, 871, 875));

- In April 2018, Plaintiff's mood was "up and down" with intermittent anxiety, constricted affect, and feelings of hopelessness and helplessness, and she rated her anxiety at 3 out of 10 and depression at 2 out of 10, and changed her medications (AR 25 (citing AR 509-512));

- In August 2018, Plaintiff was "struggling with mood swings and feeling exhausted," she rated her anxiety at 6 or 7 out of 10 and depression at 5 out of 10, and her medications were changed (AR 25 (citing AR 562-565));

- In October 2018, Plaintiff was "doing better since her last visit," and had "mild ratings of depression and anxiety" (AR 25 citing AR 566-569);

- In July 2019, she was stressed because she was "taking care of her grandchildren[3] as both of her sons were in jail," but denied suicidal thoughts, hallucinations, or delusions[4] (AR 29 citing AR 984-987);

- In October 2019, she rated her anxiety as a 5 or 6 out of 10 and her depression as a 6 out of 10; her mood was observed to be "up and down" with intermittent anxiety (AR 29 citing AR 1050-1054).[5]

Viewed as a whole, the ALJ's summary suggests that Plaintiff's depression and anxiety were up-and-down after the alleged disability onset date (April 18, 2018), but were typically moderate and responsive to treatment. The ALJ's descriptions of Lewis's notes were accurate; she did not list every fact in the notes that could have supported disability, but she repeatedly described Lewis's documentation of Plaintiff's depression and anxiety. This was an adequate discussion of the record. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (an ALJ need not "discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability") (quoting *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010)). Ultimately, the ALJ concluded that, given Lewis's opinion suggesting Plaintiff was markedly disabled and the comparatively moderate findings in his treatment notes, Lewis's

---

[3] Plaintiff objects to the ALJ highlighting that she "took care of her grandchildren" while her sons were away, because caring for family members cannot always be "equated" to employment. (Pl.'s Br., ECF No. 19 at 10 quoting *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014)). But the ALJ did not equate home activities with work. She merely pointed out a fact from Lewis's own notes that she considered at least partly inconsistent with Lewis's opinion. Given Lewis's opinion that Plaintiff suffered from a broad variety of mental health symptoms and "marked" difficulties in memory, focus, attention, cleanliness, and sustaining an "ordinary" routine (AR 1011-14), it was not error for the ALJ to mention that she was able to take care of her grandchildren.

[4] The ALJ omitted that Plaintiff rated her depression at 6 or 7 out of 10, and anxiety at 8 out of 10. (*See* AR 984).

[5] The ALJ also cited generally to large portions of the medical records in support of general statements about Plaintiff's impairments (*e.g.*, for the broad proposition that Plaintiff has a "history" of depression and anxiety (*see* AR 24 citing AR 439-513)). The ALJ cited to Lewis's notes regarding Plaintiff's gait and her use of a cane and a walker (*see* AR 20), but those are not relevant to the Court's analysis here, because Lewis did not opine as to Plaintiff's physical limitations.

opinion was "not supported by his own treatment notes." (AR 28). Another reader may have construed the facts differently, but it is not the Court's role to "reweigh evidence . . . or substitute [its] own judgment" for that of the ALJ. *McKinzey*, 641 F.3d at 889. Given the ALJ's review of Lewis's notes throughout the decision, it cannot be said that she "ignored" Lewis's notes or failed to consider whether the notes supported the opinion.

     As for the "consistency" analysis of Lewis's opinion, Plaintiff identifies several perceived flaws. First, Plaintiff notes that the ALJ referenced a medical record from 2015 that suggested she was benefiting from medication (AR 28 (citing AR 843-45)) but dismissed Dr. V. Rini's 2015 consultative exam report as unpersuasive "because it was remote in time" (AR 37 (citing AR 341)). Plaintiff believes the ALJ gave credence to older findings only when they supported her conclusion. But that is not a fair characterization of the ALJ's analysis. First, Dr. Rini's 2015 exam report was not deemed unpersuasive just because it was older, but also because it was contradicted by Plaintiff's own statements during the evaluation that led to the opinion, among other reasons. (*See* AR 37). Second, there is a difference between evaluating an opinion's *persuasiveness*, as the ALJ did with Dr. Rini's report, and describing an opinion's *consistency* with the facts in the record. It is not "cherry-picking" to point out where Lewis's opinion was not consistent with old treatment notes (as the ALJ was required to do), and at the same time acknowledge that older medical opinions are less persuasive.

     Plaintiff next argues that the ALJ misinterpreted her primary care doctor's note indicating that her bipolar disorder and anxiety were "stable" as of April 2019. (*See* AR 29 (citing AR 1023)). As Plaintiff rightly says, "one can be stable and yet disabled." (Pl.'s Br., ECF No. 19 at 9 (quoting *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. June 14, 2004)). But the ALJ never claimed otherwise. Rather, the ALJ cited this and notes from other providers indicating stable,

moderate, or improving symptoms as evidence that Lewis's opinion was inconsistent with other sources in the record. (*See* AR 28-29). Reasonable minds can differ about how much the primary care doctor's observation of Plaintiff's illnesses being "stable" contradicts Lewis's description of "marked" mental impairments with volatile symptoms. The Court will not re-weigh the evidence in this regard. But the ALJ did not err by simply observing what Plaintiff's primary care doctor had written and including it within her "consistency" analysis of Lewis's opinion. She never said that stability alone proved Plaintiff was not disabled. And given the other notes cited by the ALJ supporting her consistency analysis as to Lewis (*see* AR 28-29), any perceived error in interpreting this particular note would not have changed the outcome, so it would not require remand. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

**II.        Listings**

Next, Plaintiff argues that the ALJ provided an inadequate analysis of Listings 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive compulsive disorder"), and 12.15 ("Trauma and stressor-related disorders"). The Commissioner argues that the ALJ's analysis was adequate given her findings elsewhere in the decision, and that Plaintiff never introduced evidence showing that she met the criteria for these listings.

At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its

11

severity. *Id.* When evaluating whether an impairment is presumptively disabling under a listing, the ALJ "must discuss the listing by name and offer more than a perfunctory analysis." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020).

Listings 12.04, 12.06, and 12.15 rely on a common set of criteria, referred to in the applicable regulations as Paragraphs A, B, and C. *See* 20 C.F.R. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.15. To satisfy any of these listings, the claimant must meet Paragraph A by showing medical documentation of a disorder corresponding to that listing. *Id.* In addition, the claimant must meet *either* Paragraph B or C. Paragraph B is met if a claimant has "extreme" limitation in one of four prescribed categories of mental functioning, or "marked" limitation of two of the categories. Paragraph C is met if:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, *and there is evidence of both*:
>
> Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; *and*
>
> Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* (emphasis added and citations to regulations omitted).

In this case, the ALJ apparently found[6] that Plaintiff met the criteria for Paragraph A, but not Paragraph B, for Listings 12.04, 12.06, and 12.15. (AR 20-22). Plaintiff does not directly contest those findings. Therefore, the question of whether Plaintiff met or medically equaled the listings turns on whether the Paragraph C criteria were satisfied. The ALJ found as follows:

---

[6] The ALJ did not make an explicit finding as to Paragraph A. The Court infers from the ALJ's analysis of these listings – and her finding of bipolar disorder and generalized anxiety disorder as severe impairments – that she found sufficient medical evidence of these disorders to satisfy Paragraph A for Listings 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive compulsive disorder") and 12.15 ("Trauma and stressor-related disorders").

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence that the claimant relies, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support, or a highly structured setting, to diminish the symptoms and signs of her mental disorders. There is also no evidence that changes or increased demands have led to exacerbation of her symptoms and signs and to deterioration in her functioning. Therefore, the "paragraph C" criteria for sections 12.04, 12.6, and 12.15 are not satisfied.

(AR 22). The ALJ essentially recited the legal standard with no accompanying discussion of how the standard applied to the facts. Stating that the evidence "fails to establish" the criteria for a listing, without explaining why, is "the very type of perfunctory analysis [the Seventh Circuit has] repeatedly found inadequate." *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (an ALJ's statement that the evidence "does not establish" the criteria for the listing was inadequate) (listing cases).

The ALJ's decision can still stand if the rest of the decision adequately explains the cursory analysis of the listing. *See Jeske v. Saul*, 955 F.3d 583, 589-591 (7th Cir. 2020). Unfortunately, that was not the case here. The analysis of the listings is in fact contradicted elsewhere in the decision. For example, the ALJ stated there is "*no evidence* that the claimant relies, on an ongoing basis, upon medical treatment, [or] mental health therapy . . . to diminish the symptoms and symptoms of her mental disorders." (AR 22 (emphasis added)). But as the ALJ acknowledged later in the decision, Gerald Lewis, the psychiatric nurse, "has been treating the claimant since 2014 and sees the claimant every two or three months." (AR 28). The most recent notes from Lewis describe ongoing mental health treatment that appeared to ease the symptoms of Plaintiff's impairments: In July 2019, Lewis changed Plaintiff's medication dosage in response to worsening symptoms (AR 987). By her next visit, in October 2019, Plaintiff's mental disorders were "stable" and her symptoms had improved (AR 1053). Throughout the opinion, the ALJ documented

treatment of Plaintiff's mental health conditions with a variety of medications, such as Seroquel, Lexapro, Vraylar, Nortripyline, Adderall, and Tradozone – all of which needed to be prescribed by medical professionals. (*See* AR 24-25). This is certainly "evidence that [Plaintiff] relies, on an ongoing basis, upon medical treatment . . . to diminish the symptoms and signs of her mental disorders." (AR 22 (reciting the Paragraph C standard)). At a minimum, the ALJ failed to build the required "logical bridge" from the evidence to her contrary conclusion. *Beardsley*, 758 F.3d at 837.

The Commissioner argues that any error here is harmless because Plaintiff never introduced evidence that she had only "marginal adjustment," which is another requirement of Paragraph C. "Marginal adjustment" means "that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." 20 C.F.R. 404, Subpt. P, App. 1, §12.00(G)(2)(c). The ALJ specifically found that there was "no evidence that changes or increased demands have led to exacerbation of [Plaintiff's] symptoms and signs and to deterioration in her functioning." (AR 22). Here again, the ALJ's statement is confusing given the contrary evidence in the record, much of which was discussed in the decision.

In October 2018, for example, Lewis noted that Plaintiff was suffering from recent financial issues and arguments with her husband, which were "Axis IV stressors"[7] that potentially exacerbated her bipolar and anxiety disorders. (AR 563, 565). In July 2019, Plaintiff reported that she had been taking care of her grandchildren while her sons were in jail, and reported greater depression and anxiety. (AR 984). She testified that she struggled to handle changes in routine

---

[7] Axis IV stressors are "psychosocial and environmental problems that may affect the diagnosis, treatment, and prognosis of mental disorders." *See* Psychosocial stressors and the prognosis of major depression: a test of Axis IV https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3721739/ (last accessed January 24, 2022).

and was prone to panic attacks if she was worried about something or "overwhelmed" (AR 80). A third-party function report from Plaintiff's friend indicated that Plaintiff handled stress "horribly," and could be "quite paranoid" and "jumpy + edgy" in crowds or noisy rooms. (AR 315). The ALJ herself found that Plaintiff could only handle "simple" changes in the workplace due at least in part to her documented limitations in "adapting and managing [her]self." (AR 21, 23). On this record, it is unclear how the ALJ found "*no* evidence that changes have led to exacerbation of her symptoms [. . .] and deterioration in her functioning." (AR 22) (emphasis added).

The Court expresses no judgment on whether these symptoms are themselves examples of marginal adjustment. Clearly, not every problem adjusting to change is a result of disability. The relevant regulation is open to interpretation: "We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports[8]." 20 C.F.R. 404, Subpt. P, App. 1, §12.00(G)(2)(c). Perhaps for that reason, courts in this district have frequently remanded where ALJs have not given clear explanations of their conclusions about marginal adjustment, even if the record leaves some doubt about whether the claimant meets that criterion.[9]

---

[8] "Psychosocial supports" can include help from family members, friends, or social workers that "reduc[es] the demands" of a claimant's daily activities. *See* 20 C.F.R. 404, Subpt. P, App. 1, §12.00(D)(1)(a),(f).

[9] *See, e.g., Zieroth v. Saul*, No. 1:19-CV-181-DRL-JEM, 2020 WL 3490235, at *4 (N.D. Ind. May 29, 2020), *report and recommendation adopted sub nom., Zieroth v. Comm'r of Soc. Sec.*, No. 1:19-CV-181-DRL-JEM, 2020 WL 3491979 (N.D. Ind. June 26, 2020) (ALJ's statement that Plaintiff attended college, had previous work experience, "left his home unassisted," and engaged in some recreational activities did not demonstrate better than marginal adjustment); *Lowe v. Saul*, No. 2:18-CV-00428-JVB-SLC, 2020 WL 439413, at *4 (N.D. Ind. Jan. 9, 2020), *report and recommendation adopted sub nom.*, *Kathleen L. v. Saul*, No. 2:18-CV-428-JVB-SLC, 2020 WL 439980 (N.D. Ind. Jan. 28, 2020) ("While the Court does not find that the medical record indicates that Lowe meets or equals listing 12.06, the Court cannot conduct meaningful review where the ALJ fails to discuss or analyze the "paragraph C" criteria when the evidence suggests it is possible that Lowe met the criteria"); *Rice v. Comm'r of Soc. Sec.*, No. 1:16-CV-00340-SLC, 2018 WL 2112235, at *9-10 (N.D. Ind. May 8, 2018) ("This failure to discuss the marginal adjustment criterion in more than a perfunctory manner is problematic, given that Rice resides with her mother and

Perhaps the ALJ believed that the symptoms described above were too benign to support an ultimate finding of marginal adjustment. If she had said so, and explained how she arrived at that conclusion, remand may not have been necessary. Instead, she explicitly found that there was no marginal adjustment because there was "no evidence" that changes have led to exacerbated symptoms for Plaintiff – which appears to be flatly contradicted by the record – and provided no real explanation for that conclusion.

Because the case is remanded on other grounds, the Court makes no finding as to Plaintiff's argument that the ALJ improperly failed to accommodate her moderate limitations in concentration, persistence, and pace into the RFC. However, the Court observes that Plaintiff's argument is premised on the idea that restrictions to simple, routine, and repetitive tasks, with no quotas or production rates, are by definition insufficient to accommodate such limitations. (Pl.'s Br., ECF No. 19 at 14-16). As the Commissioner argues, there is no bright-line rule that makes a particular RFC restriction categorically inadequate. The suitability of the restriction depends on whether it addresses the claimant's particular limitations identified in the record, and whether the ALJ crafted the restriction with appropriate support from a medical opinion. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 512-13 (7th Cir. 2019) (ALJ reasonably relied on medical expert who translated concentration limitations into RFC determination that claimant could "understand, remember and carry out simple instructions"); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (holding that a restriction to "work requiring the exercise of only simple judgment . . . specifically account[ed] for . . . concentration difficulties").

---

grandmother and they help her with maintaining a daily schedule, complying with her medications, keeping her appointments, performing household tasks, and from getting overwhelmed.").

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Memorandum in Opposition to the Secretary's Decision Denying Plaintiff's Claim for Benefits [DE 19] and **REMANDS** the decision of the Commissioner of the Social Security Administration. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Plaintiff and against Defendant.

So ORDERED this 25th day of January, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT
